UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD FORD,

     Petitioner,

v.                                      Case No. 8:06-cv-1331-T-17MAP

SECRETARY, DEPARTMENT OF CORRECTIONS,

     Respondent

_____/

## **ORDER**

Pro se Petitioner Edward Ford petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He is proceeding on his court-ordered timely filed amended petition (Doc. No. 7) (hereinafter "petition"). Ford challenges his convictions for armed burglary, attempted first degree murder, aggravated battery, possession of a firearm by a convicted felon, and aggravated stalking arising from the Tenth Judicial Circuit, Polk County, Florida in Case No. CV97-12694A-XX.

PROCEDURAL HISTORY

On June 3, 1997, the State filed a nine-count Information charging Ford with three counts of armed burglary and one count each of attempted first degree murder, aggravated battery, shooting into a building, grand theft, possession of a firearm by a convicted felon, and aggravated stalking. (Exh 39: R 3-10).[1]

---

[1] Respondent filed the one-volume record on direct appeal as Respondent's Exhibit 39. All references to the record, including the change of plea transcript (R 22-32) and the sentencing hearing transcript (R 33-

On July 30, 1998, the parties appeared for trial before the Honorable Robert E. Pyle, Circuit Judge. (Exh 39: R 24-32). Ford was represented by Francis A. Solorzano, Esquire. Ford, through counsel, indicated a willingness to enter a "straight up" plea to the charges. At that time, the State orally noticed that it was not going to proceed with the charges of armed burglary, grand theft, and shooting into an occupied building (Counts III, IV, and VII of the Information). (Exh 39: R 25). Ford then entered a plea of guilty to the charges of armed burglary (2 counts), aggravated battery, attempted murder, possession of a firearm by a convicted felon, and aggravated stalking. (Exh 39: R 26). There was no agreement with the State as to a recommended sentence. After conducting a plea colloquy, the court accepted the guilty plea, stating, "The court finds the defendant to be alert and intelligent. He understands the nature of the charges and the possible consequences of his plea. And the plea is freely and voluntarily made." (Exh 39: R 30).

Prior to trial, defense counsel retained a confidential expert psychologist, Dr. Henry Dee, to examine Ford for purposes of determining sanity at the time of the offense. Dr. Dee provided the defense with a written report suggesting Ford was malingering. The written report compiled by Dr. Dee was entered in evidence at the postconviction evidentiary hearing on February 20, 2003. (Exh 10: State's Exhibit #1).

Later, during a pretrial court appearance, Ford removed his clothing.[2] Because of Ford's behavior, an Order Appointing Committee to Evaluate Defendant's Sanity at

---

50), utilize the letter "R" followed by the page numbers provided by the Clerk on the bottom right hand side of the page.

[2] Later, Ford testified at a postconviction hearing that the purpose of this behavior was to delay the proceedings. (Exh 10: R 239).

the Time of Offense and Competence to Proceed was signed by the trial court on May 6, 1998. (Exh 39: R 18-19). Doctors Freid and Kremper were appointed to evaluate Ford for competence. There are no written reports from Dr. Freid or Dr. Kremper in the record. However, the Assistant State Attorney stated at sentencing, without objection by defense counsel, that the reports basically indicated Ford was "faking it." (Exh 39: R 43).

The sentencing hearing was held before Judge Pyle on October 9, 1998. (Exh 39: R 33-50). The court found that Ford met the statutory criteria for sentencing as a habitual offender and sentenced him to life imprisonment on the two armed burglary counts and the attempted first degree murder count. The court sentenced Ford to thirty years imprisonment on the aggravated battery and possession of a firearm by a convicted felon counts, and ten years on the aggravated stalking count. (Exh 39: R 51-61). All counts are running concurrently.

Ford appealed his judgment and sentence. Mary E. Harlan, Esquire, who was appointed to represent Ford on appeal, filed an *Anders*[3] brief, stating that she could find no meritorious argument to support the contention that the trial court committed significant reversible error in this case. (Exhibit 1). Counsel invited the appellate court's attention to two potential issues for review:

Issue One

WHETHER THE TRIAL COURT ERRED IN FINDING THE DEFENDANT'S PLEA TO BE VOLUNTARY?

---

[3] *Anders v. California*, 386 U.S. 738 (1967).

-3-

Issue Two

WHETHER THE TRIAL COURT ERRED IN SENTENCING MR. HARRIS [sic] AS A HABITUAL OFFENDER?

On February 16, 2000, in Case No. 2D98-4159, the Second District Court of Appeal filed an order stating that Ford had elected not to file a supplemental pro se brief. (Exhibit 2). The State then submitted its answer brief. (Exhibit 3). On August 25, 2000, the appellate court filed a per curiam unwritten opinion affirming Ford's judgment and sentence. (Exhibit 4). *Ford v. State*, 768 So. 2d 1078 (Fla. 2d DCA 2000)[table]. The court issued the mandate on September 25, 2000. (Exhibit 5).

On March 19, 2001, Ford filed a pro se motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. (Exhibit 6). Ford raised four grounds for relief: (1) Ford was under the influence of psychotropic medication when he entered his plea and therefore did not understand the nature and consequences of his plea; (2) defense counsel was ineffective for failing to inform Ford of the availability of a voluntary intoxication defense; (3) defense counsel was ineffective for failing to advise Ford of favorable plea offers made by the State; (4) defense counsel was ineffective for erroneously advising Ford he would not receive the maximum sentence. Pursuant to the trial court's order to show cause, the State filed a response to the claims on May 29, 2001. (Exhibit 7). The State argued that grounds one and four were refuted by the record, but that Ford was entitled to an evidentiary hearing on grounds two and three of the motion. Ford filed a rebuttal to the State's response. (Exhibit 8). On June 13, 2001, the court issued an order summarily denying grounds one and four of the motion, and granting a hearing as to grounds two and three. (Exhibit 9). The court appointed attorney Rusty

-4-

Franklin, Esquire, to represent Ford at the hearing. The evidentiary hearing was held before the Honorable Susan Roberts, Circuit Judge, on February 20, 2003. (Exhibit 10). The court heard the testimony of Ford and both trial attorneys, Robert Mack, Esquire, and Francis Solorzano, Esquire. On March 25, 2003, the trial court entered its final order denying relief. (Exhibit 11).

Ford appealed the adverse rulings. The court appointed Beth Harlan, Esquire, to represent Ford on appeal. Ford's counsel filed an initial brief challenging the trial court's rulings on grounds one, two, and three of the rule 3.850 motion. (Exhibit 12). The State filed an answer brief October, 2004. (Exhibit 13). On February 25, 2005, in Case No. 2D03-1659, the Second District Court of Appeal filed an unwritten per curiam opinion affirming the trial court's denial of Ford's motion for postconviction relief. (Exhibit 14). *Ford v. State*, 901 So. 2d 124 (Fla. 2d DCA 2005)[table]. The court issued the mandate on March 22, 2005. (Exhibit 15).

On December 13, 2001, while the Rule 3.850 proceeding was still pending, Ford filed a motion to correct sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure. (Exhibit 16). He complained in the motion that he was sentenced in violation of *State v. Thompson*, 750 So. 2d 643 (Fla. 2000), and *Heggs v. State*, 759 So. 2d 620 (Fla. 2000), and that his habitual felony offender sentence was illegal. On January 11, 2002, the trial court issued an order summarily denying the third claim as successive, and directing the State to show cause on the two remaining sentencing claims. (Exhibit 17). The State filed its response on March 12, 2002. (Exhibit 18). On May 28, 2003, the court issued its final order summarily denying the remaining two sentencing claims. (Exhibit 19).

Ford appealed the adverse rulings, and filed a pro se amended initial brief. (Exhibit 20). Because of the summary nature of the proceeding, the State did not file an answer brief. On March 12, 2004, in Case No. 2D03-2687, the appellate court filed a written order affirming in part and reversing in part Ford's sentence. (Exhibit 21). *Ford v. State*, 868 So. 2d 631 (Fla. 2d DCA 2004). The appellate court reversed the order of the trial court with regard to the habitual felony offender sentence imposed for count six, attempted first-degree murder, with directions for the trial court to vacate that sentence and resentence defendant. On remand, Ford had to be resentenced under the 1994 version of the sentencing guidelines. *Id.* at 632. The court's mandate was issued on April 12, 2004. (Exhibit 22). On June 11, 2004, the trial court resentenced Ford on the attempted first degree murder count to thirty years in prison.

On June 17, 2005, Ford filed a successive Rule 3.850 motion in which he attempted to avoid the Rule's two-year time limitation by claiming the existence of newly discovered evidence. (Exhibit 23). The evidence consisted of a statement by the victim to the police saying the victim was drinking a half gallon of gin with Ford on the date of the crimes. On August 11, 2005, the trial court issued an order summarily denying the motion for postconviction relief, finding the motion to be untimely. (Exhibit 24). The order states in pertinent part:

> Defendant alleges that his trial attorneys were ineffective for not investigating a voluntary intoxication defense although having access to this statement from the victim. Defendant's claim does not constitute newly discovered evidence. Newly discovered evidence consists of facts which are unknown to the movant or the movant's attorney that could not have been ascertained by the exercise of due diligence. *See Brown v. State,* 827 So. 2d 1054 (Fla. 2d DCA 2002). Defendant admits in his Motion that his counsel had ready access to the victim's statement prior to the time the Defendant entered his plea. In accordance with Rule

3.850(b), Fla. Stat., Defendant's Motion is untimely filed. *See Doctor v. State*, 679 So. 2d 76 (Fla. 4th DCA 1996).

In addition, the transcript of the Recorded Statement of the victim that the Defendant attached to his Motion does not contain any information about how much the Defendant drank. It just indicates he possessed a half gallon of gin and asked the victim if he wanted a drink. See attached documentation. Even if Defendant's Motion had been timely filed, he has not supported a claim that his counsel's performance fell below an objective standard of reasonableness, according to the standard in *Strickland v. Washington*, 466 U.S. 668 (1984), for not pursuing a voluntary intoxication defense.

Order Denying Defendant's Motion for Postconviction Relief at pp. 1-2.

Ford appealed the denial of relief. On April 26, 2006, in Case No. 2D05-6082, the Second District Court of Appeal field an unwritten per curiam opinion affirming the trial court's order denying postconviction relief. (Exhibit 25). *Ford v. State*, 928 So. 2d 345 (Fla. 2d DCA 2006)[table]. The mandate was issued by the court on May 17, 2006. (Exhibit 26).

On November 1, 2005, Ford filed a third Rule 3.850 motion for postconviction relief based on newly discovered evidence. (Exhibit 27). The newly discovered evidence consisted of a purported written plea offer from the State providing for a 27-year guidelines prison sentence. (Exhibit 28). On November 22, 2005, Ford filed an amended memorandum of law in support of his rule 3.850 motion. Exhibit 29). Ford filed a second amended memorandum of law in support of his motion for postconviction relief on January 6, 2006. (Exhibit 30).

On March 28, 2006, the trial court issued an order summarily denying the motion for postconviction relief and second amended memorandum of law in support. (Exhibit 31). The court summarily denied the motion on procedural grounds, finding the motion

to be untimely and finding the plea offer did not constitute newly discovered evidence.

The court's order states in pertinent part:

> ... Defendant claims his Motion is not time barred because it meets the "newly discovered evidence" exception to the two-year limitation period in Rule 3.850, Fla. R. Crim. P. Defendant alleges he received his case files from the Public Defender's Office in November 2003 and became aware of a written plea offer of 27 years without habitualization from the State Attorney's Office. Defendant alleges that his trial attorneys were ineffective for not communicating the written plea offer to him. Defendant's claim does not constitute newly discovered evidence. Newly discovered evidence consists of facts which are unknown to the movant or the movant's attorney that could not have been ascertained by the exercise of due diligence. *See Brown v. State*, 827 So.2d 1054 (Fla. 2d DCA 2002). On March 19, 2001, Defendant filed a Motion for Postconviction Relief pursuant to Rule 3.850, Fla. R. Crim. P. in which one of his claims was that his trial counsel were ineffective because they failed to advise him of favorable plea offers, specifically offers of 25 years and 30 years. He did not mention the written plea offer of 27 years without habitualization. At an evidentiary hearing on February 20, 2003, for that claim, Defendant's trial attorneys, Robert Mack and Francis Solorzano, testified to the existence of the written plea offer of 27 years without a habitual felony offender designation. See Evidentiary Hearing transcript at page 73, lines 1-11. Mr. Mack further testified that it was his practice to notify his client when he received a plea offer. See tr. at page 75, lines 12-15. In the Court's Order on Motion for Postconviction Relief, issued March 25, 2003, the Court found that "the plea offers were conveyed to Defendant and he has failed to demonstrate deficient performance." See Order on Motion for Postconviction Relief at page 2-3. Additionally, the Second District Court of Appeal Per Curiam Affirmed Defendant's appeal of the Order denying his Motion for Postconviction Relief on February 25, 2005. The Mandate was issued on March 22, 2005. See attached documentation. Court finds the record directly refutes defendant's claim concerning the written plea offer. As such, Defendant's claim is **Denied** as successive.
>
> Even if the written plea offer was newly discovered evidence, Defendant's Motion would be procedurally barred as untimely. Defendant's attorneys had knowledge of the written plea offer at the time of sentencing. Even if viewed in the light favorable to the Defendant, he had actual knowledge of the written plea offer as of the February 20, 2003, evidentiary hearing. As stated above, Defendant's present motion was filed on November 3, 2003. As set forth in Rule 3.850(b), Fla. R. Crim. P., such motions must be filed within two years of the facts on which the claim is predicated were made known to the Defendant. As such,

Defendant's claims that his trial counsel was ineffective are untimely. Accordingly, Defendant's claim is **Denied**.

Order Denying Defendant's Motion for Postconviction Relief and Second Amended

Memorandum of Law in Support of Motion for Postconviction Relief, Newly Discovered

Facts at pp. 2-3.

On December 12, 2005, Ford filed another rule 3.800 motion to correct sentence,

which included a successive challenge to the legality of his habitual offender

sentencing. (Exhibit 32). On March 28, 2006, the trial court issued an order summarily

denying the claim as procedurally barred, inasmuch as Ford had raised the same issue

on direct appeal, and his habitual offender sentence was affirmed. (Exhibit 33). Ford

appealed the orders denying his third rule 3.850 motion for postconviction relief and his

third rule 3.800 motion to correct sentence. It appears that both orders, which were

rendered on the same date, were consolidated or considered together on appeal. No

briefs were filed by either party. On September 6, 2006, in Case No. 2D06-2049, the

state appellate court filed a per curiam unwritten opinion affirming the trial court's

orders denying postconviction relief. *Ford v. State*, 937 So. 2d 1105 (Fla. 2d DCA

2006)[table]. (Exhibit 34). The mandate issued on September 27, 2006. (Exhibit 35).

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's

factual findings must be highly deferential. Such findings are presumed to be correct

unless rebutted by clear and convincing evidence. Similarly, the state courts'

resolutions of issues of law-including constitutional issues-must be accepted unless

they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*  However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

THE PRESENT PETITION

Ford raises the following five grounds for relief in the present petition:

**Ground One**

The plea was not freely and voluntarily nor intelligently made/or entered.

**Ground Two**

Trial counsel was ineffective for failing to convey a plea offer made by the State.

**Ground Three**

Trial counsel was ineffective for failing to investigate the defense of voluntary intoxication, interview named witnesses, or inform Petitioner of the availability of a

voluntary intoxication defense.

## Ground Four

Petitioner does not meet the statutory criteria of Fla. Stat. § 775.084 habitual offender designation.

## Ground Five

Challenge of disciplinary action with loss of gain time credit when due process was violated.

Ford is not entitled to relief from this Court on Ground Four because it concerns a matter of state law. Ground Five must be dismissed because it does not constitute a challenge to his judgment of conviction. Grounds One, Two and Three will be denied because they fail to meet the threshold requirements of 28 U.S.C. § 2254(d) and (e).

Discussion

Ground One

Ford first claims his plea was not freely, voluntarily, and intelligently entered. Specifically, Ford alleges he was under the influence of psychotropic medication when he entered his plea and therefore did not understand the nature and consequences of the plea. This claim has no merit.

A review of the plea colloquy reflects that after Ford had been sworn, the court explained the charges and the maximum punishment for each. The court also asked Ford if he understood that there were no agreements regarding sentencing and the court could impose the maximum sentence and Ford answered in the affirmative. (Exh 39: R 27). Ford also said he understood the rights he would be waiving by not going to trial. (Exh 39: R 27- 28). Thereafter, following exchange occurred:

THE COURT: Are you under the influence of any drugs, alcohol or medication today?

THE DEFENDANT: Medication.

THE COURT: What kind of medication?

THE DEFENDANT: (Inaudible.)

THE COURT: What does that do?

MR. SOLORZANO [Defense Counsel]: Your Honor, there is -- you may recall that there's a mental health issue involved in this case. he is on psychotropic medication. I'm not sure what he's on.

THE COURT: Mr. Ford, you understand what you're doing today?

THE DEFENDANT: Yes, sir.

THE COURT: Does the drug affect your perception and your ability to understand?

THE DEFENDANT: A little bit.

THE COURT: Do you feel you understand what's going on today?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. You know, then, that you've been charged with these offenses I've read and talked to you about, you know you could go to trial on them, and you've elected to enter a plea, knowing that I could sentence you up to the maximum of the charge; you understand that?

THE DEFENDANT: Yes, sir.

(Exh 39: R 28).

In its order denying ground one of Ford's first rule 3.850 motion, the court found:

As to ground one, the Defendant argues that he was under the influence of psychotropic medication when he pled and therefore did not understand the nature and consequences of his plea. In response, the State argues that the plea colloquy conclusively proves that the trial judge specifically inquired as to the Defendant's ability to understand the

proceedings, to which he replied that he understood and had no questions (see attached transcript). The Court agrees with the State that the Defendant is not entitled to an evidentiary hearing on ground one.

Exh 9: Order on Motion for Postconviction Relief and Order Granting Evidentiary Hearing at p. 1.

The state court's decision was objectively reasonable and entitled to deference under the AEDPA standard. The standard for determining the validity of a plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Hill v. Lockhart*, 474 U.S. 52, 56, (1985). "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Stano v. Dugger,* 921 F.2d 1125, 1141 (11th Cir.) (en banc), *cert. denied,* 502 U.S. 835 (1991)(quotation omitted).

In the instant case, the trial court did not ignore the fact that Ford might have been taking psychotropic medication but rather took pains to inquire further regarding Ford's understanding of the plea proceeding. Ford responded, under oath, that he understood. The United States Supreme Court held in *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977), that "the representations of the defendant, his lawyer, and the prosecutor at such a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."

Ford has not carried his burden to overcome the presumption of veracity of his statements under oath, and Ground One does not warrant relief.

GROUND TWO

Ford contends that his trial attorney was ineffective for failing to convey a plea offer from the State. This claim also has no merit.

In this case, the state court's denial of Ford's ineffective counsel claims is neither contrary to, nor an unreasonable application of, the *Strickland* standard. The trial court addressed the issue in Ground Two in an evidentiary hearing. The court's findings and conclusions are set out in the order denying relief as follows:

> In ground three, the Defendant contends counsel was ineffective for failing to advise him of favorable plea offers made by the State. At the evidentiary hearing, Mr. Solorzano testified that there was a written plea offer for 27 years that was given during Mr. Mack's representation of Defendant. Mr. Solorzano also testified that there was another offer of 25 years, but it was subsequently withdrawn when the ballistic report came in. Mr. Mack testified that he advised Defendant on the Friday before trial was scheduled that the assistant state attorney said he might allow a plea of 30 years due to the ballistics report. Mr. Solorzano testified that he presented the 25- year offer as well as the 30-year offer to Defendant, but Defendant felt 25 years was too much time. Accordingly, the Court finds plea offers were conveyed to Defendant and he has failed to Demonstrate deficient performance.

Exh 11: Order on Motion for Postconviction Relief at pp. 2-3).

The state court's findings and legal conclusions are supported in the record. A review of the evidentiary hearing transcript shows that Ford's initial attorney, Robert Mack, testified that he interviewed Ford on the Friday before the Monday trial. He told Ford that Mr. Solorzano would try the case if Ford wanted to go to trial. (EH-R 271).[4]

---

[4] The evidentiary hearing transcript is provided as Respondent's Exhibit 10.

Alternatively, Mr. Mack told Ford they could try for a sentence to a term of years less than life with the best they could hope for was the 30-year offer by the State which was not "on the table yet." A third possibility was for Ford to enter a straight up plea and the attorneys would present mitigation evidence at sentencing.[5] (EH-R 272-273). Mr. Mack testified he laid out all the options to Ford and Ford seemed to understand. (EH-R 273). Mr. Mack said he could not recall if he conveyed the original 27-year offer to Ford, but that it is his practice to do so. (EH-R 283-284, 285). Attorney Solorzano also testified at the hearing. He said he had a "clear recollection" of discussing the plea offers with Ford. (EH-R 293). When asked what Ford's response was when he was told about the plea arrangements, Solorzano stated:

> A. Mr. Ford felt that 25 years was too much time. That was the -- I had discussed that with him ahead of time. Obviously when I came back and told them that the plea offer had been increased to 30 years because of the ballistics report [Ford] gave a similar response saying, "That's too much time." Whenever I would ask him if that's what he wanted to do, that almost invariably was his response.

(EH-R 293). Mr. Solorzano testified that he also discussed other alternatives with Ford, namely going to trial or entering an unnegotiated straight up plea. (EH-R 293-294). Mr. Solorzano testified on cross-examination that Mr. Ford's decision to plead straight up was "strictly dependent" on whether or not the victim appeared for trial. Ford had told counsel in advance of the trial that he intended to enter a plea in the event the victim were to appear at trial. (EH-R 306). The victim did appear for trial.

The record conclusively refutes Ford's claim that no plea offers were ever

---

[5] At the sentencing hearing on October 9, 1998, Ford's attorney did argue for mitigation of sentence, based primarily on Ford's history of mental illness and lack of prior violent felonies. (Exh 39: R 37-46).

conveyed to him before he entered his plea. The state court implicitly found the two trial attorneys' testimony more credible than Ford's, and Ford has not demonstrated by clear and convincing evidence that the state court's factual findings are incorrect. The state court's rejection of this claim was objectively reasonable and Ground Two does not warrant habeas corpus relief.

GROUND THREE

Ford contends his trial counsel was ineffective for failing to investigate the defense of voluntary intoxication, interview named witnesses, or inform Ford of the availability of a voluntary intoxication defense.  This claim has no merit. First,  Ground Three is waived and barred in entirety by entry of Fore's voluntary guilty plea. It is well-established state and federal law that guilty pleas waive all but jurisdictional claims up to the time of the plea. *See United States v. Broce*, 488 U.S. 563 (1989)(when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973)(holding that a guilty plea represents a break in the chain of events that preceded it in the criminal process); *Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir. 1991 ); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)(finding a plea of guilty is a waiver of several constitutional rights, including the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to insist on a jury trial).

The waiver by plea includes claims of ineffective assistance of counsel which do not implicate the validity of the plea. *See Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992) (pre-plea ineffectiveness waived); *Matthew v. Johnson*, 201 F. 3d 353, 364

-16-

(5th Cir. 2000) (noting longstanding rule that valid guilty plea bars habeas review of non-jurisdictional claims alleging antecedent violations of constitutional rights). By entering a voluntary guilty, or no contest plea, a defendant relinquishes the right to a jury trial, to assistance of counsel, to raise a defense, and to confront his or her accusers. *See Boykin*, 395 U.S. at 242-44; *Broce*, 488 U.S. at 573 (1989) (relinquishment derived not from inquiry into defendant's subjective understanding of range of potential defenses, but from admissions necessarily made upon entry of voluntary guilty plea).

Second, even if Ground Three were not waived by entry of the plea, Ford is not entitled to relief from this Court. The state trial court granted an evidentiary hearing on this claim, and properly denied it for lack of merit. The postconviction court's order reads:

> In ground two, the Defendant claims his defense counsel was ineffective for failing to inform him of the availability of a voluntary intoxication defense. At the evidentiary hearing, Defendant's trial counsel, Bob Mack, testified that Dr. Henry Dee evaluated Defendant for competency and insanity. Mr. Mack further testified that he discussed with Dr. Dee the possibility of a voluntary intoxication defense, and Dr. Dee advised against it because Defendant's crimes were too goal oriented. Additionally, Mr. Mack testified that if Defendant chose to proceed to trial, he would ask for a jury instruction on voluntary intoxication, but had significant doubt that that instruction would be granted, or that he could persuade the jury with that defense. Mr. Mack also testified that he felt certain he discussed this defense with Defendant. Subsequently, Frank Solorzano took over as counsel for Defendant. Mr. Solorzano testified that he also explored the defense of voluntary intoxication, but did not discuss it in great detail with Defendant. The Court finds not only has Defendant failed to demonstrate deficient performance, but has also failed to demonstrate a reasonable probability that the result of the proceeding would have been different.

Exh 11: Order on Motion for Postconviction Relief at p. 2.

Again, the state court's rejection of the ineffectiveness claim in Ground Three is objectively reasonable. At the evidentiary hearing, Mr. Mack testified that Ford was evaluated by a confidential defense expert, psychologist Dr. Dee. From reading the report and speaking with Dr. Dee personally, Mr. Mack was convinced the voluntary intoxication defense was extremely weak. This was because Ford's behavior in carrying out his crimes was very goal-oriented. Mr. Mack described the facts of the crimes:

> A. Yes, sir. The facts were that on May 8th of 1997 that Mr. ford had entered Ms. Heyliger's residence while she was taking a shower; that he attacked her with a knife; that she ran outside. She wound up going back to the house the same night. She ran outside nude, was picked up by a passerby, went back the same night to the house, barricaded herself in.

> But the main point was that Mr. Ford went back the next morning at 6 o'clock in the morning. The first incident was May 8th at 10 to 11:00 p.m. He goes back the next morning at around 6 o'clock, enters the residence with a gun and winds up shooting her. Then after the incident he fled and he winds up calling a friend to meet him to give him money to get out of town.

(EH-R 265-266). Mr. Mack said the State also had evidence that prior to the commission of the crimes, Ford told other people he intended to kill the victim. (EH-R 266-267). Mr. Mack could not specifically recall whether he discussed the voluntary intoxication defense with Ford before Mr. Mack was reassigned and left the case. (EH-R 267). However, he testified that it is his general practice to let his clients know the defenses he is exploring, and there is a "decent likelihood" that he did so in this case. (EH-R 267).

Mr. Solorzano, who took over Ford's case when Mr. Mack was reassigned, testified at the evidentiary hearing that he did discuss the voluntary intoxication defense

with Ford, but could not recall if he went into detail. (EH-R 291). One of Mr. Solorzano's recollections was that on a couple of occasions, he told Ford, "You understand that there is an intoxication defense and you understand the problems with that?" and Ford responded, "Yes." (EH-R 302).

The evidence presented to the state court clearly refutes Ford's allegations that his attorneys were ineffective for failing to investigate a voluntary intoxication defense and to discuss that defense with Ford. Accordingly, the denial of postconviction relief on this ground was neither contrary to, nor an unreasonable application of *Strickland*, and Ground Three does not warrant habeas relief.

GROUND FOUR

Ford alleges his sentence is illegal under Florida law because he does not meet the statutory criteria for designation as a habitual felony offender under Fla. Stat. § 775.084. This claim does not present a federal constitutional issue.

Federal courts have jurisdiction to entertain petitions for habeas relief only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims which are not based upon a violation of the United States Constitution are not cognizable in a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254(a). *Barclay v. Florida*, 463 U.S. 939 (1983). *See also Wainwright v. Goode*, 464 U.S. 78 (1983); *Engle v. Isaac*, 456 U.S. 107, 119 (1982). Errors which do not infringe upon federally protected rights provide no basis for federal habeas corpus relief. It is well-settled in this circuit that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures. *Branan v. Booth,* 861 F.2d 1507 (11th Cir. 1988); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir.

1983). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan,* 861 F.2d at 1508.

State courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997). In this case, the state appellate court's affirmance on direct appeal settles as a matter of state law that Ford meets the statutory criteria for designation as a habitual felony offender. Ground Four does not warrant habeas corpus relief.

GROUND FIVE

On September 30, 2004, prison staff issued Ford a disciplinary report for committing infraction 9-18, Unauthorized Physical Contact. (Exhibit 36 at p. 3). In Ground Five of the present petition, Ford contends his due process rights were violated when prison officials refused his request to review a video during the prison disciplinary hearing. This claim is procedurally barred.

Ford raised this issue in a petition for writ of mandamus filed in the Second Judicial Circuit of Florida, the jurisdiction where he was confined. The State filed a response, arguing as to this issue that Ford failed to preserve his claim of violation of his due process rights when the institution did not view the videotape of the incident that resulted in the disciplinary report. (Exh 36 at pp. 13-14). The State based its argument on the fact that there was nothing in the disciplinary investigative report, Ford's witness statement, witness disposition form, or the disciplinary hearing worksheet to indicate that Ford requested that the video tape be reviewed prior to or during his disciplinary hearing. In fact, the State observed, "the Plaintiff's claims that

he requested the video is further negated by the fact that in his institutional grievance dated October 7, 2004, he did not state that he had requested for the institution to review the video." (Exh 36 at p. 13). The State's response did not contain an argument on the merits of that claim. On August 19, 2005, the Circuit Court of the Second Judicial Circuit issued an order denying the petition for writ of mandamus. (Exhibit 37). Ford sought certiorari review in the First District Court of Appeal of Florida in Case No. 1D05- 4296. On April 26, 2006, the appellate court denied the petition per curiam. *Ford v. McDonough*, 928 So. 2d 339 (Fla. 1st DCA 2006)[table]. (Exhibit 38).

Claims that are unexhausted and procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72,  (1977), or by establishing the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Cause must ordinarily be something external to the defense, *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)(ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted). Ford does not meet the prejudice or fundamental miscarriage of justice exceptions to lift the state procedural bar. Moreover, Ford does not suggest the existence of new and reliable evidence of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Absent a showing of cause and prejudice, federal habeas courts may not reach the merits of "*procedurally defaulted* claims in which the petitioner failed to follow

applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992)(emphasis in original)(citing *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). *See also, Kight v. Dugger*, 50 F.3d 1539, 1543 (11th Cir. 1995)(A federal habeas court should not even discuss the merits of a claim that has been procedurally defaulted in state court).  Ground Five is procedurally defaulted and does not warrant habeas relief.

**Accordingly, the Court orders:**

That Ford's petition is denied, with prejudice.  The Clerk is directed to enter judgment against Ford and to close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 4, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Edward Ford, Pro Se